**KUTAK ROCK LLP**
Rudy R. Perrino (SBN 190672)
777 S. Figueroa Street, Suite 4550
Los Angeles, CA 90017
Rudy.Perrino@KutakRock.com

**KUTAK ROCK LLP**
Oliver D. Griffin (*Pro Hac Vice* forthcoming)
Pennsylvania Bar No. 88026
1760 Market Street, Suite 1100
Philadelphia, PA 19103-4104
Oliver.Griffin@kutakrock.com

**KUTAK ROCK LLP**
Jeffrey M. Giancana (*Pro Hac Vice* forthcoming)
Arizona Bar No. 035031
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253
Jeffrey.Giancana@kutakrock.com

Attorneys for Plaintiff,
TODD MCCARTNEY

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TODD MCCARTNEY,<br><br>          Plaintiff,<br><br>v.<br><br>GIBF GP, INC.,<br><br>          Defendant. | Case No. 5:22-cv-00761<br><br>**COMPLAINT FOR**<br><br>**1) Promissory Estoppel**<br>**2) Breach of Contract**<br>**3) Breach of the Covenant of Good Faith and Fair Dealing**<br>**4) Fraudulent Inducement**<br>**5) Negligent Misrepresentation**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Todd McCartney, by and through undersigned counsel, brings this Complaint against GIBF GP, Inc. ("**GIBF**") for Promissory Estoppel, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Fraudulent Inducement, and Negligent Misrepresentation, and alleges as follows:

///

///

COMPLAINT

4855-6769-9205.5

**PARTIES**

1. Plaintiff Todd McCartney is a resident of Oregon residing in Tigard, Oregon.

2. Upon information and belief, Defendant GIBF is a Delaware corporation with its primary place of business in Palo Alto, California.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this dispute, as there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.00.

4. This Court has jurisdiction over Defendant, as Defendant has its primary place of business in Palo Alto, California.

5. Venue is proper in this Court, as Defendant GIBF is the only defendant in this Action, and it resides in Palo Alto, California.

**THE PURCHASE CONTRACT**

6. Plaintiff realleges and incorporates paragraphs 1 thru 5 as if they are fully set forth herein.

7. On or around September 7, 2021, Plaintiff entered into a Purchase Agreement for the Simple Agreement for Future Tokens issued by GIBF GP, Inc. (the "**Purchase Agreement**").

8. Pursuant to the Purchase Agreement, Plaintiff agreed to purchase 10,000 cryptographic tokens ("**Tokens**") of Bitcoin Latinum at a purchase price of $10.00 per Token, for a total aggregate purchase amount of $100,000.

9. Under the Agreement, once the "Milestone" was reached (with the Milestone defined as the newly forked Bitcoin Network going operational), GIBF was required to issue the Tokens to Plaintiff within 30 days of the Evaluation Date.

10. There is no provision in the Purchase Agreement preventing or forbidding Plaintiff from selling his Tokens at any time.

11. Plaintiff made the payment to Defendant as provided for in the Purchase Agreement, and the Tokens were properly issued to Plaintiff.

///

///

## INDUCEMENTS TO ENTER INTO THE PURCHASE CONTRACT

12. Plaintiff realleges and incorporates paragraphs 1 thru 11 as if they are fully set forth herein.

13. An acquaintance of Plaintiff, Brandon Cantu, reached out to Plaintiff and offered him an opportunity to invest in Bitcoin Latinum, a cryptocurrency offered by Defendant, GIBF.

14. Upon information and belief, Mr. Cantu is employed by GIBF, and/or acts as an agent of GIBF, and he was responsible in that role for selling the Bitcoin Latinum shares to Plaintiff.

15. Upon information and belief, Defendant GIBF knowingly relied upon Mr. Cantu and other agents to market Bitcoin Latinum to potential investors and solicit their investment, and Mr. Cantu and those agents did market Bitcoin Latinum to Plaintiff and solicit his investment, as well as others.

16. In that capacity, upon information and belief, Mr. Cantu and the other agents were entrusted by GIBF with making representations and promises to potential investors in order to encourage their investment.

17. GIBF either knew or should have known that its agents would make such representations and promises, and intended to be bound by those representations and promises.

18. Moreover, by having its agents, including Mr. Cantu, reach out to potential investors, GIBF manifested its consent to such representations being made by those agents.

19. Based on GIBF's decision to allow these agents to solicit potential investors, Plaintiff reasonably believed that Mr. Cantu and the agents of GIBF had the authority to make promises and representations on behalf of GIBF, and Plaintiff reasonably believed that such promises and representations would be binding on GIBF.

20. On multiple occasions prior to entering into the Purchase Contract, Plaintiff asked agents of GIBF, including Mr. Cantu, if there were any restrictions on Plaintiff's ability to sell his Bitcoin investment at any time, should the price of the Bitcoin rise significantly.

21. In response, Plaintiff was told that there were no such restrictions, and that he would be free to sell at will.

1  22. On October 8, one month after entering into the Purchase Contract, Plaintiff communicated with Mr. Cantu via text message in order to confirm (in writing) previous oral promises that Plaintiff would be allowed to sell without restriction.

23. On that date, Plaintiff wrote to Mr. Cantu asking him whether there were any restrictions on his ability to transfer or otherwise pull out of his investment.

24. Mr. Cantu wrote back that there were no restrictions on his ability to transfer or otherwise pull out of his investment by selling the Tokens.

25. Mr. Cantu's response, as an authorized agent of GIBF, confirmed the previous assurances Plaintiff had received from GIBF and its agents, and represents an adoption and ratification of those promises by GIBF.

26. Plaintiff relied upon these assurances when he entered into the Purchase Contract.

27. GIBF and its agents were aware that Plaintiff entered into the Purchase Contract in reliance upon these assurances.

**DEFENDANT REFUSES TO ALLOW PLAINTIFF TO PULL OUT HIS INVESTMENT**

28. Plaintiff realleges and incorporates paragraphs 1 thru 27 as if they are fully set forth herein.

29. Plaintiff monitored the price of Bitcoin Latinum after making his investment.

30. After making his investment, Plaintiff was barred from selling his Tokens as the price increased.

31. Specifically, Plaintiff wished to sell his Tokens on the open market, but access to the tokens (in particular, the ability to liquidate them) was restricted.

32. Plaintiff was required to provide a password in order to sell the Tokens on the open market, and through this password, GIBF controlled Plaintiff's ability to sell his Tokens.

33. However, GIBF, through its agents, refused to provide Plaintiff with that password, and Plaintiff was therefore unable to sell the Tokens.

34. Mr. Cantu, despite his previous statements that there were no restrictions on Plaintiff's ability to sell, now insisted that Plaintiff could not sell "for a long time."

35. Mr. Cantu repeatedly ignored text messages from Plaintiff asking for a phone call to discuss the situation.

36. When Mr. Cantu finally did respond to Plaintiff, he gave an explanation completely at odds with his prior assurances.

37. Specifically, Mr. Cantu wrote "I told you it's gonna be a while before it's traceable. Their [*sic*] is not volume yet. We are being very strategic right now. We are starting w smaller exchanges we don't even have enough volume right now. And it's only in Asia right now. We are releasing about a new exchange a week."

38. On November 13, 2021, Plaintiff learned that the price of Bitcoin Latinum had increased to $204.36 per Token.

39. Thus, Plaintiff's Tokens were worth $2,043,600 on that date.

40. However, when Plaintiff attempted to sell these Tokens to realize this gain, GIBF continued to refuse to allow him to do so.

41. GIBF insisted that there were a series of restrictions on Plaintiff's ability to pull his investment and liquidize his Tokens, including a limit that he could only liquidate 20% of his Tokens in one day.

42. Similarly, GIBF insisted that Plaintiff was entitled to receive the amount of his investment back, but no more.

43. Specifically, Plaintiff reached out to Don Basile, the founder of Bitcoin Latinum and a director of GIBF, to inquire about his ability to sell the Tokens, but Mr. Basile failed to respond.

44. When Plaintiff indicated that he had retained legal counsel to help advise him with the issue, Mr. Basile quickly informed him that his contract was cancelled and his investment would be refunded.

45. When informed that this was not what Plaintiff wanted, Mr. Basile repeated his statement once, then refused to respond further.

46. No restrictions on Plaintiff's ability to sell the Tokens are present in the Agreement, and Plaintiff was entitled to sell all of his Tokens on that date, and for that price.

## CLAIM FOR RELIEF ONE

## Promissory Estoppel

47. Plaintiff realleges and incorporates paragraphs 1 thru 46 as if they are fully set forth herein .

48. Mr. Cantu served as an employee of GIBF, and he solicited Plaintiff to purchase Bitcoin Latinum shares, and facilitated the actual sale of those shares.

49. Mr. Cantu had actual and apparent authority to bind GIBF through his promises and representations.

50. Upon information and belief, Mr. Cantu had been instructed to solicit potential investors by GIBF, and such solicitation was done on behalf of GIBF.

51. GIBF was bound by the promises made by Mr. Cantu during his solicitation of potential clients, and it intended to be so bound.

52. Plaintiff knew that Mr. Cantu was acting on behalf of GIBF, and reasonably believed that Mr. Cantu had the authority to bind GIBF through the promises that he made.

53. GIBF's decision to entrust the solicitation of potential investors to Mr. Cantu caused Plaintiff to reasonably believe that Mr. Cantu was authorized to bind GIBF through his promises and representations.

54. Plaintiff explicitly inquired as to whether there were any restrictions on his ability to pull out the investment immediately and sell his Tokens.

55. In response, Mr. Cantu and/or other agents of GIBF told Plaintiff that Plaintiff would be entitled to withdraw his investment at any time, and that there were no restrictions on his ability to sell his Tokens.

56. Such assurances were made to Plaintiff by agents of GIBF, including Mr. Cantu, before he decided to enter into the Purchase Contract, and he relied upon those assurances when he elected to enter into that Contract.

57. On behalf of GIBF, Mr. Cantu later affirmed those promises in writing.

58. GIBF and its agents knew (or reasonably should have foreseen) that Plaintiff would rely upon these promises, as Plaintiff had explicitly asked if he was entitled to withdraw his investment prior to the execution of the Purchase Contract.

59. GIBF and its agents made that promise with the intention that Plaintiff would rely upon it and decide to invest in GIBF and purchase Bitcoin Latinum.

60. Plaintiff relied upon that promise when he decided to purchase Bitcoin Latinum from GIBF.

61. Injustice can only be avoided through the enforcement of the promise.

62. Plaintiff is entitled to an order allowing him to sell his Bitcoin Latinum Tokens at market price, with no restrictions. Additionally, Plaintiff is entitled to money damages equaling the difference between $2,043,600 and the amount netted from his sale of the Tokens.

## CLAIM FOR RELIEF TWO

### Breach of Contract

63. Plaintiff realleges and incorporates paragraphs 1 thru 62 as if they are fully set forth herein.

64. The Purchase Agreement constitutes a valid and binding contract between the Parties.

65. There is no provision in the Purchase Agreement preventing Plaintiff from selling the entirety of his Tokens at any time he sees fit.

66. On October 30, 2021 (22 days after written confirmation that Plaintiff would be free to sell the Bitcoin Latinum as he saw fit), Mr. Cantu told Plaintiff that he was not free to sell the Bitcoin.

67. The Purchase Agreement provides that it may only be amended in writing executed by all Parties to the Agreement.

68. Plaintiff never agreed, in writing or otherwise, to the restrictions on his ability to sell the Tokens that have been imposed by GIBF.

69. Plaintiff is entitled to money damages equaling the difference between $2,043,600 and any amount he is able to net from a sale of the Tokens.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

COMPLAINT

4855-6769-9205.5

# CLAIM FOR RELIEF THREE

## Breach of the Covenant of Good Faith and Fair Dealing

70. Plaintiff realleges and incorporates paragraphs 1 thru 69 as if they are fully set forth herein.

71. The Purchase Agreement constitutes a valid and binding contract between the Parties.

72. In California, a covenant of good faith and fair dealing is implied in every contract.

73. The covenant of good faith and fair dealing supplements the express contractual covenants contained in the Purchase Agreement and prevents GIBF from engaging in conduct that frustrates the Plaintiff's rights to the benefits of the Purchase Agreement.

74. Plaintiff entered into the Purchase Agreement in reliance upon promises that he would be entitled to sell at any time.

75. The benefit to Plaintiff of entering into the Purchase Agreement was the possibility that he would be able to profit from his investment by selling his Tokens should the value of the Tokens appreciate following Plaintiff's purchase.

76. The Tokens did appreciate in value, and Plaintiff wished to sell the Tokens.

77. The ability to sell his Tokens for profit was the reason Plaintiff entered into the Purchase Agreement.

78. By refusing to allow Plaintiff to sell, GIBF deprived Plaintiff of the benefits of the Purchase Contract for which he had bargained.

79. Plaintiff is entitled to money damages equaling the difference between $2,043,600 and any amount he is able to net from a sale of the Tokens.

# CLAIM FOR RELIEF FOUR

## Fraudulent Inducement

80. Plaintiff realleges and incorporates paragraphs 1 thru 79 as if they are fully set forth herein.

81. GIBF, through its agents, represented to Plaintiff that he would be entitled to sell his investment in Bitcoin Latinum at any time.

82. Mr. Cantu, acting within the scope of his agency on behalf of GIBF, confirmed this representation in writing.

83. GIBF and its agents either knew these statements were false at the time they were made, or were recklessly indifferent to the truth of those assurances.

84. Specifically, GIBF and its agents knew that it would be "a while" before the Bitcoin Latinum was traceable, and that GIBF's strategy meant that GIBF would not allow the sale of the Tokens in the short term.

85. However, GIBF (through its agents) represented to Plaintiff that he would be able to sell his Tokens at any time, and with no restrictions.

86. These false representations allowed GIBF to solicit potential investors without having to reveal up front that it was seeking a long-term investment in a highly-volatile market.

87. GIBF made these false representations in response to specific inquiries from Plaintiff.

88. Thus, GIBF knew that Plaintiff would rely upon these representations when making his decision to enter into the Purchase Contract, and intended that Plaintiff so rely.

89. Plaintiff so relied, and decided to invest in Bitcoin Latinum based on the assurances provided by GIBF and its agents.

90. Plaintiff's reliance was reasonable, as he was explicitly told there was no time-based limitation on his ability to sell, and there is no provision in the Purchase Agreement establishing such a limitation.

91. Plaintiff has been damaged by his reliance on these false promises.

92. Plaintiff is entitled to money damages equaling the difference between $2,043,600 and any amount he is able to net from a sale of the Tokens.

///

///

///

## CLAIM FOR RELIEF FIVE

### Negligent Misrepresentation

93. Plaintiff realleges and incorporates paragraphs 1 thru 92 as if they are fully set forth herein.

94. GIBF, through its agents, represented to Plaintiff that he would be entitled to sell his investment in Bitcoin Latinum at any time.

95. Mr. Cantu, acting within the scope of his agency on behalf of GIBF, confirmed this representation in writing.

96. GIBF and its agents knew or should have known that these statements were false, and had no reasonable grounds to believe these statements were true.

97. Specifically, GIBF and its agents knew or should have known that it would be "a while" before the Bitcoin Latinum was traceable, and that GIBF's strategy meant that GIBF would not allow the sale of the Tokens in the short term.

98. However, GIBF (through its agents) represented to Plaintiff that he would be able to sell his Tokens at any time, and with no restrictions.

99. These false representations allowed GIBF to solicit potential investors without having to reveal up front that it was seeking a long-term investment in a highly-volatile market.

100. GIBF made these false representations in response to specific inquiries from Plaintiff.

101. Thus, GIBF knew or should have known that Plaintiff would rely upon these representations when making his decision to enter into the Purchase Contract, and intended that Plaintiff so rely.

102. Plaintiff so relied, and decided to invest in Bitcoin Latinum based on the assurances provided by GIBF and its agents.

103. Plaintiff's reliance was reasonable, as he was explicitly told there was no time-based limitation on his ability to sell, and there is no provision in the Purchase Agreement establishing such a limitation.

104. Plaintiff has been damaged by his reliance on these false promises.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

4855-6769-9205.5

105. Plaintiff is entitled to money damages equaling the difference between $2,043,600 and any amount he is able to net from a sale of the Tokens

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests that the Court enter judgment against Defendant, and in Plaintiff's favor, as follows:

1. For money damages equaling the difference between $2,043,600 and any amount Plaintiff is able to net from a sale of the Tokens;

2. For all damages recoverable under all other causes of action, and;

3. For any other relief the Court deems just and proper.

Dated: February 4, 2022

/s/ Rudy R. Perrino
Rudy R. Perrino (SBN 190672)
KUTAK ROCK LLP
777 S. Figueroa Street, Suite 4550
Los Angeles, CA  90017
Rudy.Perrino@KutakRock.com